UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KYLE MERIDIETH,                   )
                                         )
          Plaintiff,            )
                                         )
v.                              )     No.:   3:07-CV-103
                                       )            (VARLAN/GUYTON)
ELAINE I. CHAO and          )
UNITED STATES DEPARTMENT  )
OF LABOR,                  )
                                       )
         Defendants.        )

## MEMORANDUM OPINION

This civil action is before the Court on plaintiff Kyle Meridieth's Brief in Support of Seeking Judicial Review of the Department of Labor's Determination of Plaintiff's Rights to Benefits Under the Energy Employee's Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. §§ 7384, *et seq.* [Doc. 23], in which plaintiff seeks judicial review of the November 30, 2007 decision of the United States Department of Labor (the "Labor Department") regarding plaintiff's entitlement to benefits under Part E of the EEOICPA. Defendants Elaine I. Chao and the Labor Department (collectively, "defendants") have filed a brief in opposition [Doc. 24], and plaintiff has filed a reply [Doc. 25]. The matter is ripe for determination.

## I.    Procedural Background and Relevant Facts

Part E of EEOICPA establishes a compensation program that provides benefits to individuals, or their eligible survivors, with illnesses incurred as a result of exposure to a

toxic substance in the performance of the individuals' work for the United States Department

of Energy (the "DOE"), its predecessor agencies, or certain of its contractors and

subcontractors. *See* 42 U.S.C. §§ 7385s, 7385s-1. On August 29, 2005, plaintiff filed a

claim for benefits under Part E with the Department of Labor's Office of Workers'

Compensation Programs ("OWCP"), claiming the condition of "asbestos related lung

disease."[1] [AR, 889].[2] In support of his claim, plaintiff submitted various medical evidence

including notes, records, and doctors' reports and opinions [*see id.*, 131-33, 360, 845-888].

On June 24, 2006, OWCP requested additional information from plaintiff, including

whether he had filed a tort suit or a state workers' compensation claim related to his claimed

condition of asbestos related lung disease [AR, 140]. In response, plaintiff submitted

additional medical reports and informed OWCP that he had previously filed a tort suit and

received settlement payments totaling $18,532.43 [*Id.*, 92-104].[3] Plaintiff also informed

OWCP that he had previously filed a state workers' compensation claim and received a final

---

[1] The condition of "asbestos related lung disease" is also referred to as "asbestosis" in the parties' briefs and in this Memorandum Opinion. For the purposes of this case and this Memorandum Opinion, the two terms refer to the same condition.

[2] All references to "AR" are to the administrative record filed in this case.

[3] The tort suit is styled *Kyle Edward Meridieth v. AC and S, Inc., et al.*, No. 1-553-92, and was filed in Knox County Circuit Court on August 14, 1992 [AR, 93-99]. According to plaintiff, the suit was filed for the claimed condition of asbestos related lung disease and settlements of $18,532.43 have been paid, less one-third for attorney's fees and $1,703.96 for costs of suit, resulting in a net recovery of $10,651.06 [*Id.*, 92].

settlement award of $150,869.60 for the condition of "asbestos related lung disease" (referred to hereinafter as plaintiff's "workers' compensation settlement") [*Id.*, 92].[4]

On November 24, 2006 OWCP issued a recommended decision (the "First Recommended Decision"), accepting plaintiff's Part E claim for the covered illness of asbestosis [AR, 87]. OWCP also concluded that coordination of plaintiff's workers' compensation settlement with his Part E benefits was required [*Id.*]. *See* 42 U.S.C. § 7385s-11 (describing coordination of benefits under Part E, described *supra*). Due to this coordination, OWCP determined that a "surplus" of $119,392.18 was created which needed to be absorbed before payment of plaintiff's Part E benefits could begin [*Id.*, 87].[5] The First Recommended Decision did not discuss plaintiff's settlement payments from his tort suit [*Id.*, 86-87]. On December 1, 2006, plaintiff objected to the First Recommended Decision, contending that his workers' compensation settlement was "for asbestosis *and* a non-covered illness (any non malignant respiratory injury), and . . . no reduction on the basis of this state workers' compensation settlement should be made." [*Id.*, 81 (emphasis in original)].

On February 7, 2007, the Final Adjudication Branch (the "FAB") issued a final decision (the "First Final Decision") disagreeing with plaintiff's objection [AR, 74-78]. The

___

[4] The state workers' compensation suit is styled *Kyle E. Meridieth v. Union Carbide Corp., et al.*, No. A5LA0597, and was filed in the Circuit Court for Anderson County on November 15, 2005 [AR, 106]. According to plaintiff, he received a final settlement award of $150,869.60, from which $30,173.92 was deducted as attorney's fees, and $1,303.50 was deducted for court expenses [*Id.*, 92].

[5] The surplus amount, $119,392.00, was the net recovery from plaintiff's workers' compensation settlement [AR, 110-16].

First Final Decision agreed with the First Recommended Decision, accepting plaintiff's Part

E claim for the covered illness of asbestosis, agreeing that coordination was required, and

agreeing that a surplus of $119,392.18 had been created [*Id.*]. The First Final Decision also

did not discuss plaintiff's settlement payments from his tort suit [*Id.*]. On March 22, 2007,

plaintiff filed a complaint with this Court seeking judicial review of the First Final Decision

[*Id.*, 67-70, Doc. 1]. *See* 42 U.S.C. § 7385s-6 (providing for judicial and administrative

review).

On April 30, 2007, the director of OWCP's Division of Energy Employees

Occupational Illness Compensation issued an order vacating the First Final Decision because

plaintiff's workers' compensation settlement had not been properly coordinated with his Part

E benefits and plaintiff's Part E benefits had not been offset to reflect plaintiff's settlement

payments from his tort suit [AR, 52-54]. The order to vacate also directed that a new

recommended decision be issued [*Id.*, 53-54]. On July 10, 2007, plaintiff and defendants

filed a joint stipulation in this Court to hold this case in abeyance pending the issuance of a

new final decision on plaintiff's Part E claim [*Id.*, Doc. 8]. The Court issued an Order to that

effect [Doc. 9].

On August 15, 2007, OWCP issued a second recommended decision (the "Second

Recommended Decision"), again accepting plaintiff's Part E claim for the covered illness of

asbestosis and awarding him medical benefits [AR, 33-37]. The Second Recommended

Decision again found that coordination was required and a "surplus" had been created, this

time, in the amount of $132,065.71 [*Id.*].[6] The Second Recommended Decision determined that plaintiff's workers' compensation settlement only covered the one illness of "asbestosis or asbestos-related lung disease" and coordination was required [*Id.*, 35]. The Second Recommended Decision also concluded that plaintiff had contracted only one illness—asbestosis—due to his work-related exposure to asbestos and plaintiff's diagnosed condition of chronic obstructive pulmonary disease ("COPD") was not work related but due to thirty years of cigarette smoking [*Id.*, 33, 35-37].

On August 29, 2007, plaintiff objected to the Second Recommended Decision and filed an affidavit supporting his objection by Dr. Ronald Cherry, dated April 20, 2007 [AR, 11-12]. In the objection, plaintiff again contended that there should be no coordination of his Part E benefits with his workers' compensation settlement because the settlement was "received for the conditions of asbestos related lung disease *and* any non-malignant lung injury . . . ." [*Id.*, 12 (emphasis added)]. Specifically, plaintiff argued that he had received a diagnoses of COPD from Dr. Cherry who also opined that COPD is a non-malignant lung injury [*Id.*, 11, 13].[7] On October 25, 2007, the FAB issued a second final decision (the "Second Final Decision") [*Id.*, 16-21] consistent with the Second Recommended Decision.

---

[6] This surplus amount included the workers' compensation settlement and the settlement payments from plaintiff's tort suit, which the First Recommended Decision had not included [*Id.*, 33-37].

[7] In a medical report by Dr. Cherry, dated October 21, 2005, Dr. Cherry also opined that it was his impression that plaintiff had asbestosis and COPD [AR, 132]. In a second medical report by Dr. Cherry, dated October 31, 2005, Dr. Cherry opined that, based on several tests, plaintiff had asbestosis due to asbestos exposure and COPD due to cigarette smoking [*Id.*, 133].

On November 7, 2007, plaintiff requested reconsideration of the Second Final Decision based on his August 29, 2007 objection to the Second Recommended Decision [*Id.*, 11].

On November 30, 2007, the FAB issued a notice of granted request for reconsideration and final decision on plaintiff's claim (the "Reconsideration and Third Final Decision"), which is the subject of plaintiff's request for judicial review [*Id.*, 3-9].[8] Based on the record generated in plaintiff's case, including plaintiff's November 7, 2007 objection to the Second Recommended Decision and the supporting affidavit of Dr. Cherry, the Reconsideration and Third Final Decision concluded that plaintiff was entitled to medical benefits due to asbestosis, that coordination of plaintiff's workers' compensation settlement was required, along with an offset of benefits to reflect his tort suit settlement payments, and that the "surplus" created by these actions needed to be absorbed before any Part E benefits could be paid [*Id.*, 9]. In doing so, the Reconsideration and Third Final Decision concluded that plaintiff had not established that he had received his workers' compensation settlement for both a covered illness and a non-covered illness arising out of and in the course of a work-related incident or incidents [*Id.*]. Finally, the Reconsideration and Third Final Decision concluded that the evidence of record "establishes that [plaintiff's] COPD is due to his nonwork-related cigarette smoking rather than to his exposure to asbestos while employed . . . ." [*Id.*, 8-9].

---

[8] This Reconsideration and Third Final Decision is essentially the same as the Second Final Decision.

On January 8, 2008, plaintiff filed a motion to reinstate [Doc. 11] this case on the Court's docket. On January 17, 2008, plaintiff filed his amended complaint [Doc. 12] seeking judicial review of the Reconsideration and Third Final Decision. Pursuant to the Court's scheduling order [Doc. 19], plaintiff filed a brief in support of his request for judicial review [Doc. 23], defendants filed a response in opposition [Doc. 24], and plaintiff filed a reply [Doc. 25].

## II.     Standard of Review

This Court has jurisdiction to review the Department of Labor's decision regarding plaintiff's claimed benefits under Part E of EEOICPA. Title 42 of the United States Code, section 7385s-6(a) provides that "[a] person adversely affected or aggrieved by a final decision . . . under . . . [P]art [E] may review that order in the United States district court in the district in which the injury was sustained . . . ." 42 U.S.C. § 7385s-6(a). Section 7385s-6(a) further provides that the district court "shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision." *Id.* The district court "may modify or set aside such decision," however, "only if the court determines that such decision was arbitrary and capricious." *Id.*

The arbitrary and capricious standard "is the least demanding review of an administrative action." *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 475 (6th Cir. 2004). "It requires the party challenging the agency's action to 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* at 475 (quoting *McDonald Welding v. Webb*, 829 F.2d 593, 595

(6th Cir. 1987)). "If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious." *Coal. for Gov't Procurement*, 365 F.3d at 475-76.

### III.  Analysis

As previously stated, Part E of EEOICPA establishes a compensation program that provides benefits to individuals with illnesses incurred as a result of exposure to a toxic substance in the performance of the individual's work for the DOE or certain or its contractors. *See* 42 U.S.C. §§ 7385s, 7385s-1, 7385s-8. Benefits under Part E must be coordinated if the individual "has also received benefits from a State workers compensation system by reason of the same covered illness[.]" 42 U.S.C. § 7385s-11. Pursuant to § 7385s-11, the individual "shall receive compensation . . . reduced by the amount of any workers compensation benefits, other than medical benefits and benefits for vocational rehabilitation, that the individual received under the state workers compensation system by reason of the covered illness . . . ." *Id.* However, "coordination of benefits will not occur if the [individual] under a state workers' compensation program receives state workers' compensation benefits for both a covered and a non-covered illness arising out of and in the course of the same work-related incident." 20 C.F.R. § 30.626(c)(3).

In this case, the Reconsideration and Third Final Decision concluded that plaintiff was entitled to recover benefits under Part E for the claimed condition of asbestosis [AR, 9]. The Reconsideration and Third Final Decision also concluded that coordination was required because plaintiff recovered for the same condition of asbestosis in both his workers'

compensation settlement and his claim under Part E [*Id.*].[9]  Further, the Reconsideration and

Third Final Decision concluded that the administrative record did not establish that plaintiff

received benefits in his workers' compensation settlement for both a covered condition and

a non-covered condition arising out of and in the course of the same work-related incident

[*Id.*].  Plaintiff objects to this conclusion, arguing that it is arbitrary and capricious because

no coordination is warranted under 42 U.S.C. § 7385s-11 and 20 C.F.R. § 30.626(c)(3).

Plaintiff acknowledges that he was awarded Part E benefits for the covered condition of

asbestosis, a condition for which he was also awarded benefits under his workers'

compensation settlement.  However, plaintiff asserts that his workers' compensation

settlement covered *two* conditions—the covered condition of asbestosis *and* the non-covered

condition of "any non-malignant respiratory injury," specifically, COPD.  Thus, plaintiff

argues, he should be exempt from coordination under 20 C.F.R. § 30.626(c)(3).

### A.    Plaintiff's Workers' Compensation Settlement

OWCP reviewed the medical evidence submitted by plaintiff and determined that he

was entitled to benefits for the covered condition of asbestosis.  Then, in accordance with 42

---

[9] Plaintiff has stated that he "agrees that the [Department of Labor] is correct in their offset
. . . in regard to [plaintiff's tort suit]." [*see* Doc. 23, p. 4].  Accordingly, the Court has not addressed
this issue.

U.S.C. § 7385s-11(c),[10] OWCP also reviewed plaintiff's workers' compensation complaint and the state court order approving plaintiff's workers' compensation settlement agreement (the "settlement order") to determine whether plaintiff's workers' compensation settlement covered asbestosis, the condition plaintiff was entitled to recover for under Part E, and, if so, how much in benefits plaintiff had received. Upon review of the complaint, OWCP determined that plaintiff had only alleged the condition of "asbestosis or asbestos related lung disease." Upon review of the settlement order, OWCP determined that the order also referred to a single condition—asbestos-related lung disease. OWCP concluded that because the settlement order's mention of "any non-malignant respiratory injury" did not appear until the penultimate page of the order, it did not constitute a judicial finding that plaintiff received benefits for a second condition. Accordingly, OWCP determined that plaintiff's settlement of his workers' compensation claim was for the same condition plaintiff was entitled to recover benefits for under Part E—asbestosis or asbestos related lung disease—and thus, coordination was required.

Plaintiff argues that OWCP's interpretation of his workers' compensation settlement is arbitrary and capricious because the settlement order covered two distinct conditions: (1) asbestosis or asbestos related lung disease and (2) any non-malignant respiratory injury,

---

[10] 42 U.S.C. § 7385s-11(c) provides that "upon request by the Secretary, [a DOE contractor employee claiming benefits must] provide to the Secretary on a quarterly basis information concerning workers compensation benefits received by the covered DOE contractor employee entitled to compensation or benefits under this part, which shall include . . . [the] nature and amount of workers' compensation benefits for each such employee for which the request was made." 42 U.S.C. § 7385s-11(c).

specifically, COPD.  Plaintiff acknowledges that the settlement order does not specifically

mention COPD, but he contends that the reference in the settlement order to "any non-

malignant respiratory injury" was a direct reference to plaintiff's COPD, noted by Dr. Robert

Chironna on June 8, 1992 [AR, 869-70],[11] and by Dr. Cherry on October 21 and 31, 2005

[*Id.*, 131-33].[12]

The Court does not agree that OWCP's interpretation of the settlement agreement was

arbitrary and capricious.  In the Third Recommended Decision [AR, 36], OWCP noted that

plaintiff's workers' compensation complaint sought compensation for only "asbestosis or

asbestos-related lung disease," and the workers' compensation complaint contains no

mention of any non-malignant respiratory injury or the more specific condition of COPD [*Id.*,

107-08, ¶¶ 3, 6, 7].  OWCP also noted that the settlement order found that plaintiff had

contracted a single condition, "asbestos-related lung disease" and that the settlement would

relieve the defendants in that case of all liability to plaintiff for "the claimed occupational

asbestos-related lung disease and any non-malignant respiratory injury." [*Id.*, 37, 110-15].[13]

---

[11] In a medical report dated June 8, 1992, Dr. Chironna opined that plaintiff had "probable
asbestos-related lung disease and mild [COPD] [AR, 33, 869-70]

[12] *See supra* note 7.

[13] The Second Recommended Decision, which is consistent with the Third Recommended
Decision concluded that "[w]hile the [settlement order] concluded that payment of the settlement
would relieve the defendant of all liability for 'the claimed occupational asbestos-related lung
disease and any non-malignant respiratory injury,' this does not mean that the settlement was for
anything other that the employee's 'covered illness' of asbestosis . . . .  This conclusion is consistent
with the remainder of the [settlement order], which found in Sections II, III, and V that the employee
had contracted a single illness of 'asbestos-related lung disease,' not that illness *and* any non-
malignant respiratory injury." [AR, 37].

Thus, there is only one mention of "any non-malignant respiratory injury" contained in the

settlement order and the order contains at least three references to *only* plaintiff's asbestos-

related lung disease [*see id.*]. The specific condition of COPD is never mentioned in the

settlement order. Further, when plaintiff informed OWCP of his workers' compensation

settlement he did not mention COPD and stated that "I have filed for and received an award

of state workers' compensation benefits for the condition of asbestos related lung disease.

. . . Thus the net recover yto [plaintiff] in this state workers' compensation case for any non-

malignant respiratory injury and asbestos related lung disease is $119,392.18." [*Id.*, 92]/

The applicable regulations provide that coordination of benefits will not occur if a

state workers' compensation suit covers "*both* a covered and a non-covered illness arising

out of and in the course of the same work-related incident." 20 C.F.R. § 30.626(c)(3). Upon

the Court's review of plaintiff's workers' compensation complaint, the settlement order, and

the applicable regulations, the Court cannot conclude that the Reconsideration and Third

Final Decision has no rational basis or involved a clear and prejudicial violation of the

applicable statute and regulations. The term "non-malignant respiratory injury," to the extent

it even refers to the specific condition of COPD, was never mentioned in the complaint and

only mentioned once in the settlement order.[14] Further, the condition of COPD was never

---

[14] In support of his argument, plaintiff asserts that Dr. Cherry stated, in his affidavit filed with plaintiff's objections to the Second Recommended Decision, that "COPD is a non-malignant respiratory injury." [AR, 13; Doc. 23, p. 9]. However, whether or not COPD may be included within the category of non-malignant respiratory injuries does not answer the question of whether plaintiff received his workers' compensation settlement for both a covered and a non-covered condition arising out of and in the course of the same work-related incident. *See* 20 C.F.R. § 30.626(c)(3).

mentioned in the complaint or in the settlement order, but is only included in the administrative record by way of the medical reports included in the record. Plaintiff's argument that his COPD diagnosis necessarily implies that his workers' compensation settlement covered that specific condition is thus not supported by the evidence of record. Further, plaintiff argues that the reference to "any non-malignant respiratory injury" was a "direct reference to [p]laintiff's COPD]." [Doc. 23, p. 9]. However, the term "any" contradicts this point. The settlement order directly refers to "any" non-malignant injury, not "the" specific non-malignant respiratory injury or condition of COPD.

Based on the evidence contained in the administrative record and upon which OWCP based its Reconsideration and Third Final Decision, and because the statutory language and applicable regulation require a clear showing of benefits received for "both a covered and a non-covered illness," the Court finds that the Reconsideration and Third Final Decision was supported by substantial evidence and based on a rational interpretation and a careful consideration of the relevant documents in the administration record and the applicable regulations. Plaintiff's argument that the phrase "any non-malignant respiratory injury" refers specifically to COPD because plaintiff was diagnosed with this condition is not enough to make OWCP's interpretation of the settlement order unreasonable or irrational. Thus, the Court finds that the Reconsideration and Third Final Decision, stating that plaintiff's workers' compensation settlement only covered the condition of asbestosis or asbestos-related lung disease, is not arbitrary and capricious.

**B.** **"Arising Out of and in the Course of the Same Work-Related Incident"**

OWCP's finding that coordination is required would not be arbitrary and capricious even if the phrase "non-malignant respiratory disease" was interpreted as constituting recovery of benefits based on a second, non-covered condition. Title 20, section 30.626 of the Code of Federal Regulations outlines how OWCP coordinates compensation payable under Part E of EEOICPA with benefits from state workers' compensation programs. *See* 20 C.F.R. § 30.626. The regulation also explains the situation in which a claimant under Part E may be exempt from coordination. *Id.* § 30.626(c)(3). "[C]oordination of benefits will not occur if the beneficiary under a state workers' compensation program receives state workers' compensation benefits for both a covered and a non-covered illness arising out of and in the course of the same work-related incident." *Id.*

OWCP discussed four specific medical opinions in the Reconsideration and Third Recommended Decision: (1) an October 7, 1997 letter by Dr. James Scutero [AR, 867];[15] (2) a June 8, 1992 report by Dr. Chironna [*Id.*, 869-70]; (3) an October 21, 2005 medical report by Dr. Cherry [*Id.*, 131-32]; and (4) an October 31, 2005 medical report, also by Dr. Cherry [*Id.*, 133-38].[16] Each medical report contains a diagnoses of asbestosis and three of the four

---

[15] The October 7, 1997 letter by Dr. Scutero only contains a diagnosis of asbestosis and no mention of COPD [AR, 867].

[16] Other medical reports support OWCP's finding [*see eg.,* AR, 846 (August 8, 2003 doctor's letter stating that plaintiff was diagnosed with "asbestosis due to his occupational exposure to asbestos in the work place"); *id.*, 868 (August 27, 1991 medical report describing a bilateral pleural plaque formation that was consistent with "previous asbestos exposure"); *id.*, 360 (August 29, 1994 physical examination form noting plaintiff's history of smoking and stating that "[p]oor pulmonary function test throughout his work history here primarily, if not wholly technique in nature. However, must consider some elements of possible underlying COPD in view of smoking history.")

reports contain a diagnosis of COPD. However, not one of the medical reports contains evidence of a causal relationship between plaintiff's diagnosis of COPD and his exposure to asbestos during his employment with a DOC facility. In fact, Dr. Cherry noted in his October 31, 2005 report, that plaintiff suffered from "asbestosis . . . related to his occupational exposures to asbestos dust[,]" and, in a separate sentence, that plaintiff "also suffers from [COPD] related to prior cigarette smoking." [*Id.*, 133].[17] Further, each medical report that lists COPD as a diagnosis also mentions plaintiff's thirty years of cigarette smoking and indicates that such behavior affected plaintiff's health. In addition, Dr. Cherry's affidavit only states that plaintiff was diagnosed with COPD, not that COPD resulted from plaintiff's work in the course of his employment with a DOE facility [*Id.*, 13]. The fact that COPD may constitute a "non-malignant respiratory injury" does not answer the question of whether COPD was an "illness arising out and in the course of the same work-related incident" as that of the claimed condition of asbestosis. *See* 20 C.F.R. § 30.626(c)(3). The fact that plaintiff was diagnosed with both conditions at the same time does not imply the conditions arose from the same work-related incident or incidents.

---

[17] Dr. Cherry's report of October 21, 2005 also mentions both asbestosis and COPD [AR, 131-32]. Dr. Cherry's report indicates that plaintiff's asbestosis related to his work with the DOE facilities, specifically mentioning plaintiff's work with the DOE facilities in connection with plaintiff's exposure to asbestos [*Id.*, 131]. Dr. Cherry's reference to plaintiff's cigarette smoking is contained in a discussion of plaintiff's "Social History," which does not mention plaintiff's work with the DOE facilities [*Id.*]. Further, as stated previously, Dr. Cherry's second report, dated October 31, 2005, specifically states, in two separate sentences, that plaintiff "suffers from asbestosis . . . related to his occupational exposures to asbestos dust" and "suffers from [COPD] related to prior cigarette smoking." [*Id.*]. There is no indication that the two were related.

In addition to the medical reports, the administrative record also supports the conclusion of the Reconsideration and Third Final Decision that COPD was not a condition arising out of and in the course of plaintiff's employment with a DOE facility. No relief for COPD was sought in the underlying workers' compensation complaint and the settlement order contains no reference to COPD beyond the phrase "any non-malignant respiratory injury." Accordingly, the conclusion of the Reconsideration and Third Final Decision, that plaintiff's COPD did not arise out of and in the course of the same work-related incident or incidents which resulted in the condition of asbestosis, is not arbitrary and capricious. The Court cannot find, based on a review of OWCP's decisions and recommendations, the administrative record—including the medical evidence, reports, and the underlying suit actions—and plaintiff's objections, that plaintiff has established that the Reconsideration and Third Final Decision had no rational basis or involved a clear and prejudicial violation of applicable statutes or regulations.

## IV. Conclusion

In sum, the Department of Labor's Reconsideration and Third Recommended Decision, determined by the OWCP, and concluding that plaintiff's Part E benefits under EEOICPA should be coordinated, was not arbitrary and capricious. Contrary to plaintiff's assertions, OWCP properly weighed the evidence, thoroughly considered the administrative record, and properly applied the relevant regulations. Accordingly, plaintiff's Brief in Support of Seeking Judicial Review of the Department of Labor's Determination of Plaintiff's Rights to Benefits Under the Energy Employee's Occupational Illness

Compensation Program Act [Doc. 23] is hereby **DENIED** and judgment is entered in favor

of defendants.  An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE